THE CITY OF CHICAGO, Plaintiff-Appellant, *v.* CLARENCE ALLEN *et al.,* Defendants-Appellees.

(No. 57404;

First District (3rd Division)—February 6, 1975.

Richard L. Curry, Corporation Counsel, of Chicago (Daniel Pascale and Ann Acker, Assistant Corporation Counsel, of counsel), for appellant.

Paul C. Ross, of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

The defendants in the 26 consolidated cases were charged with the sale of allegedly obscene printed matter in violation of the Chicago Obscenity Ordinance (Municipal Code of the City of Chicago, ch. 192, par. 192—9). After a bench trial, the circuit court of Cook County found all the defendants not guilty, holding that the material was constitutionally protected. The City of Chicago appeals the ruling, such an appeal being permitted since a violation of the ordinance in question is punishable only by fine. *City of Crystal Lake v. Nelson* (1972), 5 Ill.App.3d 358, 361, 283 N.E.2d 239; *Village of Maywood v. Houston* (1956), 10 Ill.2d 117.

We reverse and remand.

The facts concerning the sale of the materials were stipulated to by the parties; only questions of law were before the trial court.

The allegedly obscene material consists of 19 magazines and 6 paperback books. For the record, we list the titles of the publications: "Photo-Illustrated Oralism and Sexual Intercourse," "Libido," "Full Swing," "Over 18," "World of Love & Sex, book seven," "Intimate Hours, number 6," "Sense, vol. 2," "The Sexual Woman," "Sex Marriage and the Orgy," "Sex in Marriage, vol. 1, number 4," "Eve's Rib," "Trios, vol. 2, number 3," "Life & Love, vol. 1, number 3," "Make-Out, vol. 1, number 2," "Shackled," "Commence, vol. 1, number 2," "Sex Study, vol. 1, number 1," "Sexscope, vol. 1, number 6," "Foreplay, vol. 1, number 5," "New Sex Trends, vol. 1, number 1," "The Teeny Suckers," "The Animal Lovers," "Casebook, vol. 1, number 2," "Communal Sex," "Adult Sex Hangups, vol. 1." We have reviewed each of the publications so that we may make the independent constitutional judgments required under *Jacobellis v. Ohio* (1964), 378 U.S. 184.

■■ The instant cases were originally tried under the standards set forth in *Memoirs v. Massachusetts* (1966), 383 U.S. 413, whether to the average person applying contemporary community standards "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (1) the material is utterly without redeeming social value." The three elements must coalesce, and "[e]ach of the three federal constitutional criteria is to be applied independently;

the social value of the book can neither be weighed against nor cancelled by its prurient appeal or patent offensiveness." (383 U.S. 413, 418-19.) Subsequent to the trial, however, the "utterly without redeeming social value" test was changed by the United States Supreme Court. Mr. Chief Justice Burger, writing the majority opinion of the Court, announced the new test of "(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (*Miller v. California* (1973), 413 U.S. 15, 24.) For the purposes of our analysis in the instant cases, the Illinois Supreme Court has recently held that we are to use the *Miller* standard with the exception that the *Memoirs* standard shall be used if it is more favorable to the defendants. *People v. Ridens* (1974), 59 Ill.2d 362.

■■ After having examined the 25 publications (two defendants sold the same book, accounting for the 26 cases), we find that each and every publication, read and viewed as a whole, fulfills each element of both the Chicago Obscenity Ordinance and the three-prong Federal constitutional considerations under both the *Memoirs* and the *Miller* standards. Although defendants contend that the materials are not "utterly without redeeming social value" because of the inclusion of some innocuous educational, literary, historical, or sociological text in the books and magazines, we disagree. Viewed as a whole, each publication is utterly without redeeming social value. (*Ciampa v. City of Chicago* (1973), 12 Ill.App.3d 368, 299 N.E.2d 53; *People v. Price* (1972), 8 Ill. App.3d 158, 289 N.E.2d 280; *People v. Penney* (1972), 7 Ill.App.3d 191, 287 N.E.2d 220; *City of Chicago v. Geraci* (1970), 46 Ill.2d 576, 264 N.E.2d 153.) We particularly note that the book entitled "The Teeny Suckers" was held to be obscene under the *Memoirs* standard in *Wilhoit v. United States* (D.C. App. 1971) 279 A.2d 505, *cert. denied,* 404 U.S. 994. Although defendants also contend that the photographs are not obscene under *Redrup v. New York* (1967) 386 U.S. 767, and the series of cases decided under it, we note that the photographs condemned in *People v. Ridens* (1972), 51 Ill.2d 410, remanded to be considered in light of *Miller,* 413 U.S. 912, *aff'd* (1974), 59 Ill.2d 362, are identical in nature to or less sexually explicit than the photographs in the instant case. Subsequent to oral arguments, the Illinois Supreme Court filed its opinion in *People v. Gould* (Nos. 42652, 42662 cons., September, 1974 Term), an obscenity case. Therein, magazines containing photographs similar to those in *Ridens* were held to be obscene. Accordingly, we hold that the 25 publications before us are obscene under the Chicago Obscenity Ordinance recently held constitutional in *City of Chicago v. Bagnell,* 25 Ill.App.3d 231, and are not protected by the first amendment.

The judgments of not guilty by the circuit court of Cook County are reversed, and the 26 causes consolidated on appeal are remanded for further actions consistent with the views expressed herein.

Reversed and remanded.

McNAMARA and MEJDA, JJ., concur.