THE BEVERLY BANK et al., Plaintiffs-Appellants, v. THE COUNTY OF COOK, Defendant-Appellee (Committee To Save Our Environment et al., Intervening Defendants-Appellees).

First District (3rd Division) 85—3684

Opinion filed June 10, 1987.—Rehearing denied August 7, 1987.

Peter B. Carey, of Chicago (Joyce & Kubasiak, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan Cherry, Susan Condon, and Matthew M. Klein, Assistant State's Attorneys, of counsel), for appellee County of Cook.

William Carmody, of Ross & Carmody, of Chicago, for appellee La Salle National Bank.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, the Beverly Bank, as trustee, and Harry A. Carlson, doing business as South Suburban Development Company, sought declaratory and injunctive relief when defendant County of Cook denied plaintiffs the requested zoning relief for the development of a sanitary landfill. Other defendants were permitted to intervene. Following an evidentiary hearing, the trial court entered judgment in favor of defendants. The trial court found that the zoning ordinance was reasonable and not unconstitutional, and plaintiffs do not appeal from that finding. Plaintiffs appeal only from the court's findings that State law does not preempt the county's zoning authority as a home rule unit and that the county is not estopped from exercising its zoning authority.

The dispute over the zoning of the subject property has been prolonged now for over a decade and was previously before this court in *Carlson v. Briceland* (1978), 61 Ill. App. 3d 247, 377 N.E.2d 1138, *modified* (1979), 75 Ill. 2d 589, 401 N.E.2d 1390. The 40 acres of property in Cook County are owned by Beverly Bank as trustee and

are sought to be developed by Carlson as a sanitary landfill and reclamation project. The property is zoned R-3, single-family residence. In 1960, Cook County had issued to the prior owners of the property a special use permit authorizing them to conduct surface mining operations. Surface mining operations under the permit have continued after Carlson bought the land.

Prior to January 1975, Carlson executed a contract to buy the subject property, contingent on his being able to develop the property as a sanitary landfill. In April 1975, Carlson applied for a Department of Mines and Minerals permit to mine peat on the subject property and to reclaim the mined land by sanitary filling. Notice was sent to Cook County of the application, and the County filed no objection. In May, the permit was issued. In April 1975, Carlson also applied for an Illinois Environmental Protection Agency (EPA) permit to develop a sanitary landfill, and in May the permit was issued, contingent upon Carlson's obtaining zoning approval from the county. On July 1, 1975, Carlson waived the contingency in his purchase contract and bought the property for $120,000.

On July 7, 1975, Carlson filed the original complaint in this action against the Illinois EPA to declare invalid and enjoin the enforcement of the zoning contingency in the permit. On July 25, Cook County intervened as a party defendant. Carlson began development of the property in July or August 1975. He spent $130,000 to develop the site as a sanitary landfill and estimates that he would need to spend $400,000 to $500,000 to complete the project.

The trial court held that Cook County lacked the zoning authority to determine the site of the landfill. On November 26, 1975, the trial court entered summary judgment against the Illinois EPA, invalidating the environmental permit condition. The trial court also dismissed Cook County's counterclaim. This court reversed, finding that the county zoning restrictions were applicable based on the county's home rule status. (*Carlson v. Briceland* (1978), 61 Ill. App. 3d 247, 377 N.E.2d 1138.) Our supreme court found that this court correctly held that the permit holder was subject to the county's zoning authority. However, this court had remanded with directions to enter an injunction against plaintiff's landfill project until the county granted a permit. The supreme court found that this order deprived the parties of any hearing on the counterclaim for injunction. Thus, the court modified this court's decision so as to reflect that the cause was remanded to the trial court for further proceedings consistent with its opinion in *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553. (*Carlson v. Briceland* (1979), 75 Ill. 2d 589, 401

N.E.2d 1390.) In *Sexton*, the court held that the county, as a home rule unit, had concurrent jurisdiction with the Illinois EPA in regard to landfills.

This court then remanded the cause to the trial court for a hearing on Carlson's answer to the county's counterclaim for an injunction. On September 21, 1978, the trial court granted the county's preliminary injunction prohibiting Carlson from proceeding with the landfill project until further order of the court, or until granted a special use permit by the Cook County zoning board of appeals. The board recommended denial of the zoning relief requested by Carlson, and the Cook County board of commissioners subsequently denied Carlson's application for a unique use permit to use the subject site as a sanitary landfill.

Plaintiffs then filed the present suit for declaratory judgment and other relief. Will County, village of Orland Park, a citizen group called Committee to Save Our Environment, and four banks as trustees under land trusts were permitted to intervene as defendants. In 1981, this case was consolidated with a suit brought against plaintiffs by the Committee to Save Our Environment.

Plaintiffs have expressly adopted the fact findings of the trial court. Because the fact findings are not disputed, and the testimony offered at the evidentiary hearing was mainly in regard to the issue of the reasonableness of the zoning restriction, an issue which is not before us on appeal, most of the testimony is not repeated here.

The amended complaint alleged that the zoning ordinance was unconstitutional and that to apply the zoning ordinance would improperly give retroactive effect to the 1976 home rule ordinance. It alleged further that the county failed to object to plaintiffs' sanitary landfill reclamation plan filed with the Illinois Department of Mines and Minerals, and thus the county was estopped from asserting its zoning ordinance against plaintiffs. Moreover, the Illinois Land Conservation and Reclamation Act rendered the county zoning ordinance inapplicable to plaintiffs' landfill project. The complaint sought a declaration that the 1975 zoning ordinance was void; a declaration that plaintiffs had a right to develop and operate the property in accordance with the Illinois EPA permits; and an injunction enjoining the county from interfering with plaintiffs' planned developments.

On January 23, 1985, the trial court entered judgment in favor of defendants. The trial court found that the zoning ordinance was reasonable; that the county's zoning authority was not preempted by State law; and that Cook County was not estopped to enforce its zoning ordinance. Plaintiffs appeal from the latter two findings only.

Plaintiffs first contend that Cook County's zoning authority is preempted by the State's authority under the Illinois Surface-Mined Land Conservation and Reclamation Act (Reclamation Act) (Ill. Rev. Stat. 1977, ch. 96½, par. 4501 *et seq.*).

■ Article VII, section 6, of the 1970 Illinois Constitution creates broad home rule powers, Home rule units may exercise any power and perform any function pertaining to their government and affairs, including regulation for the protection of the public health, safety, morals and welfare. (Ill. Const. 1970, art. VII, sec. 6(a)). The powers and functions of home rule units are to be liberally construed. (Ill. Const. 1970, art. VII, sec. 6(m).) The legislature may deny or limit home rule powers by a three-fifths majority vote. (Ill. Const. 1970, art. VII, sec. 6(g).) The legislature may provide specifically by law for the exclusive exercise by the State of any power or function of home rule units. (Ill. Const. 1970, art. VII, secs. 6(g), (h).) A statute must contain an express statement to the effect that it renders an area one of exclusive control by the State. (*City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 42 N.E.2d 196.) In the absence of express legislation, a home rule unit may perform concurrently with the State. Ill. Const. 1970, art. VII, sec. 6(i).

Plaintiffs argue that the Reclamation Act implies a statewide interest which prevents home rule units from adopting zoning regulations in the area. We find no express preemption in the Reclamation Act enacted under section 6 of article VII of the Constitution so as to limit or deny the power of a home rule unit. Ill. Const. 1970, art. VII, sec. 6.

■ The Reclamation Act provides that requirements under the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*) must be fully complied with during and after mining and reclamation. (Ill. Rev. Stat. 1977, ch. 96½, par. 4507(g).) Furthermore, the statutory reclamation requirements do not apply to land used for a sanitary landfill if the landfill is approved by the EPA. The EPA may regulate the amount of land to be used for landfill and may establish a time schedule for the completion of the landfill. (Ill. Rev. Stat. 1977, ch. 96½, par. 4507(j).) The EPA, however, does not have the power to designate the actual site for the landfill. See *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553.

In *Sexton*, the court held that the determination of sites for landfills is within the home rule powers of Cook County under section 6 of article VII of the 1970 Constitution. Because the location of landfills involves both State and local concerns, home rule units may regulate

concurrently with the legislature. The Illinois Environmental Protection Act does not expressly provide that the State should operate exclusively in the field. (75 Ill. 2d 494, 389 N.E.2d 553.) The Environmental Protection Act, however, preempts the power of non-home-rule units to regulate sanitary landfills. (*Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493.) In *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183, the court reaffirmed its holding in *Sexton*, finding that the 1970 Constitution confers concurrent jurisdiction over sanitary landfills on the Environmental Protection Agency and on home rule units. We find these holdings to be controlling here, and we hold that there is concurrent jurisdiction over sanitary landfill sites on the State under the Reclamation Act and on home rule units.

Plaintiffs attempt to distinguish the holdings in *Cosmopolitan National Bank* and *Sexton* by arguing that the Reclamation Act (Ill. Rev. Stat. 1975, ch. 93, pars. 201 through 216) was not involved in those cases. Plaintiffs rely on *American Smelting & Refining Co. v. County of Knox* (1974), 60 Ill. 2d 133, 324 N.E.2d 398, where the court held that the county zoning ordinances did not apply to the determination of strip-mining reclamation standards because the appropriate State agency had exclusive power to regulate in that area. Plaintiffs also point to a 1981 amendment to the Reclamation Act which recognizes the duty to comply with applicable laws regarding the commencement, location, or operation of surface mining facilities. (Ill. Rev. Stat. 1981, ch. 96½, par. 4502.) This amendment has no retroactive effect. *County of Kendall v. Avery Gravel Co.* (1984), 101 Ill. 2d 428, 463 N.E.2d 723.

We find *American Smelting* to be distinguishable on the basis that it involved the relation between the Reclamation Act and a non-home-rule unit. In contrast, the present case involves the power of a home rule unit. *American Smelting* should not be read to alter the *Sexton* and *Cosmopolitan* holdings with respect to the zoning authority of home rule units over landfill sites. See *County of Cook v. John Sexton v. Contractors Co.* (1979), 75 Ill. 2d 494, 389 N.E.2d 553, distinguishing *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 343 N.E.2d 493 (distinguished on basis of whether or not unit was home rule).

■ Furthermore, in *American Smelting*, the court found the rationale of *O'Connor v. City of Rockford* (1972), 52 Ill. 2d 360, 288 N.E.2d 432, applicable. Significantly, in *Sexton* the court distinguished *O'Connor* on the basis that *O'Connor* involved a non-home-rule unit. That same distinction applies here. All the decisions support our holding that concurrent authority exists between a home rule unit's zon-

ing powers and the authority of the State under the Illinois Reclamation Act. Plaintiffs must comply with both State and county regulations. The trial court correctly found that the county zoning ordinance at issue was not preempted by the Reclamation Act.

■ Plaintiffs next contend that Cook County is estopped from asserting its zoning ordinance against them because the county failed to object to the issuance of Carlson's mining permit, or to the filed reclamation plans. A public body will be estopped only when it is necessary to prevent fraud or injustice. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 934, 17 L. Ed. 2d 806, 87 S. Ct. 1302.) Estoppel is found against public bodies only in rare and unusual circumstances. (*Dean Foods Co. v. Pollution Control Board* (1986), 143 Ill. App. 3d 322, 492 N.E.2d 1344.) Mere inaction is not sufficient to invoke estoppel. (*Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674, 472 N.E.2d 1228.) Here, the county's conduct in not objecting to the issuance of the mining permit or filed reclamation plans constituted mere inaction. The county never indicated in any type of affirmative manner that zoning for the landfill site was approved. The county's failure to object was only nonaction and not a positive act. See *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376.

■ In addition, estoppel may not be invoked where it would operate to defeat the effectiveness of a policy adopted to protect. (*Dean Foods Co. v. Pollution Control Board* (1986), 143 Ill. App. 3d 322, 338, 492 N.E.2d 1344, citing *Tri-County Landfill Co. v. Pollution Control Board* (1976), 41 Ill. App. 3d 249, 353 N.E.2d 316.) Here, the sanitary landfill site clearly affects environmental standards and thus the health, safety and welfare of the public. And the trial court upheld the county's decision that the subject property is not a suitable location for the landfill.

■ ■ Plaintiff argues that the county acted affirmatively in regard to the 1960 special use permit issued by the county. Plaintiff reasons that the 1960 authorized mining operations created the condition necessitating reclamation. That permit, however, only related to mining and not to sanitary landfill. Nothing indicates the county anticipated such a zoning change as plaintiff seeks here.

Moreover, in 15 years, progress has been made in determining the dangers of locating a landfill within an area zoned for residential uses. The county is not bound forever by a 1960 permit. The issuance of a mining permit 15 years earlier should not be allowed to bar the adoption and application of more effective environmental and zoning controls merely because less efficient ones were approved in the past, es-

pecially in the absence of rare and unusual circumstances. (See *Dean Foods Co. v. Pollution Control Board* (1986), 143 Ill. App. 3d 322, 492 N.E.2d 1344.) Even where a party has been issued a permit which he relied upon to his detriment, a municipality may not be estopped from revoking that permit and rezoning the area where the evidence that showed a new peril to the health, safety, morals, and welfare of the general community has since arisen. *In re Island Club Marina, Ltd.* (Bankr. N.D. Ill. 1984), 38 Bankr. 847.

Carlson also points to expenditures he has made. Carlson was aware of the zoning problems when he executed the land purchase contract; when he received the EPA permit conditional upon obtaining zoning approval; and when he waived the sales contract contingency. In fact, originally this action was filed against EPA to have the condition in the permit declared void. Carlson still chose to begin development after the original complaint was filed. Thus, we also find estoppel would be improper because Carlson has failed to show a justified reliance on any conduct by the county. See *County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment is affirmed.

RIZZI and WHITE, JJ., concur.