(No. 74201.

THE VILLAGE OF BOLINGBROOK, Appellant, v.
CITIZENS UTILITIES COMPANY OF ILLINOIS,
Appellee.

*Opinion filed February 3, 1994.*

Barry L. Moss, Norma J. Guess and George A. Marchetti, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellee.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, the Village of Bolingbrook, is a home rule municipality. Defendant, Citizens Utilities Company of Illinois, is an investor-owned Illinois public utility. Defendant furnishes water and sanitary sewage services within plaintiff's corporate limits.

Plaintiff alleges that on April 9, 1991, and April 15, 1991, there were substantial discharges of raw, untreated sanitary sewage from defendant's lines. These discharges allegedly deposited raw sewage on various properties located throughout plaintiff's corporate limits.

Based on the individual sewage discharges, plaintiff filed 20 separate complaints against defendant in the circuit court of Will County for violation of its municipal ordinance number 24—201, which provides as follows:

"*UNLAWFUL PLACEMENT OF WASTE PROHIBITED*. It shall be unlawful for any person to place, deposit, or permit to be deposited in any unsanitary manner on public or private property within the Village, or on any area under the jurisdiction of the Village, any human or animal excrement, garbage or other objectionable waste."

Two of these complaints related to the alleged April 9 discharges of sewage. The remaining 18 complaints related to the alleged discharges of April 15. Plaintiff also filed 22 additional complaints against defendant under its municipal ordinance number 24—200, which provides as follows:

"*UNLAWFUL DISCHARGE INTO NATURAL OUTLET*. It shall be unlawful to discharge to any natural outlet within the Village, or in any area under the jurisdiction of the Village, any sewage or other polluted waters, except where suitable treatment has been provided in accordance with subsequent provisions of this Chapter."

Two of these complaints related to the alleged April 9

discharges of sewage. The remaining 20 complaints related to the alleged discharges of April 15.

The 42 complaints filed by plaintiff against defendant carried fines of $100 each. Plaintiff did not seek an injunction to prevent future discharges of sewage or to force defendant to repair its sewer lines.

Defendant filed motions to dismiss the complaints alleging that the Public Utilities Act (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.*) preempted plaintiff's ordinances. The circuit court held that the ordinances were preempted and granted defendant's motions. The appellate court affirmed, with one justice dissenting. (231 Ill. App. 3d 740.) Plaintiff requested leave to appeal to this court and we granted the request. (134 Ill. 2d R. 315(a).) We now reverse.

## DISCUSSION

The first issue presented is whether plaintiff, as a home rule unit, had authority to enact the ordinances in question. If so, we must then consider whether the enforcement of plaintiff's ordinances against a public utility is preempted by the Public Utilities Act.

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." (Ill. Const. 1970, art. VII, § 6(a).) Section 6(m) provides that "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

Plaintiff's ordinances were designed to protect the public health, and are therefore a valid exercise of plaintiff's home rule power under section 6 of the 1970 Illinois Constitution. Our finding that plaintiff's home rule powers provide authority for the ordinances in question does not end our inquiry. Defendant contends

that plaintiff's ordinances are preempted by the Public Utilities Act (the Act).

The conflict between State and local legislation is one of the most troublesome areas associated with home rule. To prevent the problems in this area experienced by the courts of other home rule States, the delegates to the Sixth Illinois Constitutional Convention proposed to limit traditional preemption by providing clear constitutional guidelines for the General Assembly to follow in preempting the powers of a home rule unit. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1645.) In furtherance of this objective, the delegates drafted sections 6(g), 6(h) and 6(i) of article VII. Section 6(g) provides that the General Assembly may, by a three-fifths majority vote, deny or limit home rule powers in an area not regulated by the State. (Ill. Const. 1970, art. VII, § 6(g).) Under section 6(h), the General Assembly may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." (Ill. Const. 1970, art. VII, § 6(h).) Section 6(i) states that, in the absence of express language, "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit." Ill. Const. 1970, art. VII, § 6(i).

Defendant contends that the Act provides for comprehensive regulation of public utilities. (See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—102 ("The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of *** environmentally safe *** public utility services ***. It is therefore declared to be the policy of the State that public utilities shall continue to be regulated effectively and comprehensively").) Defendant claims that by comprehensively regulating public utilities, the Act satisfies the provisions of section 6(h) requiring that the General Assembly specifically provide by law for the exclusive

exercise by the State of a home rule unit's power to enact laws for the public welfare as that power relates to public utilities. In support of its position, defendant cites *Illinois Liquor Control Comm'n v. City of Joliet* (1975), 26 Ill. App. 3d 27, 32, where the appellate court stated that "exclusivity [under section 6] may be expressed *** by enactment of a comprehensive regulatory scheme."

We decline to adopt the reasoning of *Illinois Liquor Control Comm'n v. City of Joliet.* Section 6(h) provides that the General Assembly may "provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit." (Ill. Const. 1970, art. VII, § 6(h).) We believe the language of section 6(h) is clear. In order to meet the requirements of section 6(h), legislation must contain express language that the area covered by the legislation is to be exclusively controlled by the State. (See *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, 108; *Beverly Bank v. County of Cook* (1987), 157 Ill. App. 3d 601, 605.) It is not enough that the State comprehensively regulates an area which otherwise would fall into home rule power. Accordingly, we do not believe that the requirements of section 6(h) have been met in the present case.

Defendant next claims that as applied to public utilities, plaintiff's ordinances do not pertain to plaintiff's government and affairs. (See Ill. Const. 1970, art. VII, § 6(a).) An ordinance pertains to the government and affairs of a home rule unit where the ordinance relates to problems that are local in nature rather than State or national. *People ex rel. Bernardi v. City of Highland Park* (1988), 121 Ill. 2d 1, 12-13; *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 501; *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 542.

Extreme cases are clear. If a problem is purely statewide or national in nature, it does not pertain to the government and affairs of a home rule unit. On the

other hand, if a problem is purely local in nature, it does pertain to the government and affairs of a home rule unit. Difficulty arises, however, when a problem has a local as well as a statewide or national impact. In this instance, the court must weigh several factors. The relevant factors were set out in *Kalodimos*, 103 Ill. 2d 483.

In *Kalodimos*, the Village of Morton Grove passed an ordinance banning the possession of all operable handguns. Certain residents of Morton Grove filed suit for a declaratory judgment that the ordinance was invalid. In part, plaintiffs claimed that the regulation of firearms was a matter of statewide concern, and that it was thus beyond a home rule unit's power to enact an ordinance banning handguns. The court stated:

> "Whether a particular problem is of statewide rather than local dimension must be decided not on the basis of a specific formula or listing set forth in the Constitution but with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos*, 103 Ill. 2d at 501.

See also *Ampersand, Inc.*, 61 Ill. 2d at 539-41.

Defendant contends that because the Act comprehensively regulates public utilities, it is beyond a home rule unit's power to enact an ordinance affecting the operations of a public utility. As stated in *Kalodimos*, the historic regulation of an area is merely one factor to consider in determining whether the area is of local dimension. In any event, we do not believe that the existence of prior State regulation supports defendant's position.

Although the Act comprehensively regulates public utilities, plaintiff is not attempting to regulate defendant in the present case. The total fines assessed by plaintiff against defendant are less than $5,000. This

relatively minor amount will have no significant impact upon defendant's business operations. Additionally, plaintiff's ordinances do not require defendant to alter operations or make repairs to their sewer lines. The ordinances simply assess fines when raw sewage has been deposited on property within plaintiff's corporate limits. Finally, plaintiff's ordinances do not subject defendant to varying local standards because plaintiff's ordinances are not violated unless the Act has also unequivocally been violated. See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 8—401 ("Every public utility subject to this Act shall provide service and facilities which are in all respects *** environmentally safe").

Regarding the nature and extent of the problem in the present case, we believe plaintiff suffered the main impact of the sewage discharges. Defendant has not presented evidence that discharges of raw sewage present a statewide problem. We note that this case does not deal with the ordinary method of sewage disposal. On the contrary, this case deals with isolated incidents of a system malfunction. Where the impact of a problem is confined to an isolated area, and there is no evidence that the particular problem is common throughout the State, the "nature and extent of the problem" are local in dimension.

Finally, regarding the unit of government which has the most vital interest in solving the problem, we believe plaintiff's interest here outweighs that of the State. While the State is concerned with the maintenance of effective utility service in the abstract, the citizens of plaintiff have been subjected to raw sewage being dumped on their property. This represents a real and immediate danger to the health and welfare of plaintiff's constituents.

All three factors outlined in *Kalodimos* suggest that the sewage discharges by defendant presented a problem

that was primarily local in nature. Plaintiff's ordinances do not regulate defendant, but are drafted in a manner whereby they have only an ancillary effect on defendant. The nature and extent of the problem of sewage discharges primarily affects plaintiff rather than the State, and plaintiff has a more significant interest in solving the problem than does the State. Accordingly, we reject defendant's contention that as applied to a public utility, the ordinances do not pertain to plaintiff's government and affairs.

Defendant next contends, and the appellate court held, that by comprehensively regulating public utilities, the General Assembly impliedly preempted home rule authority in the area of public utility regulation. The courts of this State have consistently refused to find implied preemption of home rule powers.

In *City of Evanston v. Create, Inc.* (1981), 85 Ill. 2d 101, plaintiff (the City) filed a complaint against defendant (Create) for Create's violation of the City's residential landlord and tenant ordinance. Create claimed that "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1979, ch. 80, par. 1 *et seq.*) was a comprehensive statutory plan that implied a statewide interest which necessarily prevented the home rule unit from adopting conflicting enactments. (*City of Evanston*, 85 Ill. 2d at 108.) This court held that because the State had not acted under either section 6(g) or section 6(h), it could find no preemption. *City of Evanston*, 85 Ill. 2d at 109.

In *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, plaintiffs sought a declaratory judgment that a Cook County ordinance providing a tax on the retail sale of alcoholic beverages violated section 6. This court found that, although there were extensive regulations placed upon the liquor industry by the State, nowhere in the statutory scheme was there evidence of an intent by the

legislature that its control be exclusive. (*Mulligan*, 61 Ill. 2d at 548.) The court held that even if the ordinance had conflicted with a State statute, the ordinance would be valid unless the General Assembly had enacted appropriate legislation subsequent to the 1970 Constitution. *Mulligan*, 61 Ill. 2d at 550.

In *Beverly Bank v. County of Cook* (1987), 157 Ill. App. 3d 601, plaintiffs sought declaratory relief when defendant, the County of Cook, denied plaintiffs the requested zoning relief for the development of a sanitary landfill. Plaintiffs argued that Cook County's zoning authority was preempted by the State's authority under the Illinois Surface-Mined Land Conservation and Reclamation Act (Reclamation Act) (Ill. Rev. Stat. 1977, ch. 96$^1$/$_2$, par. 4501 *et seq.*). Plaintiffs argued that the Reclamation Act implied a statewide interest which prevented home rule units from adopting zoning regulations in the area. (*Beverly Bank*, 157 Ill. App. 3d at 605.) The court found that because the Reclamation Act contained no express preemption under section 6 limiting or denying the power of a home rule unit, plaintiffs' argument must fail. *Beverly Bank*, 157 Ill. App. 3d at 605.

We decline to depart from historical precedent and adopt an implied preemption doctrine of home rule authority in Illinois. As stated earlier in this opinion, in order to exempt an area from home rule authority, the legislature must act as provided in section 6 of the 1970 Illinois Constitution. It has been over 22 years since the effective date of the 1970 Illinois Constitution, and we believe the legislature has had ample time to enact appropriate legislation where it feels that home rule power should be somehow limited. The General Assembly has addressed the Public Utilities Act (See Pub. Act 84—617, eff. January 1, 1986), and failed to enact the language required by section 6. It is not for us to usurp

a function accorded to the General Assembly by the Constitution.

In the present case, the appellate court held that the Act impliedly preempted plaintiff's ordinances. We disagree. In order to preempt home rule power, the General Assembly must act as provided in section 6.

## CONCLUSION

We find that plaintiff had authority to enact the municipal ordinances in question. We further find that the ordinances are not specifically or impliedly preempted by the Public Utilities Act. Accordingly, we reverse the circuit court and the appellate court, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*